IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JALIL FLOYD | § | |
| v. | § | CIVIL ACTION NO. 6:21cv274 |
| OFFICER POLITE, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Jalil Floyd, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit complaining of alleged violations of his rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The sole remaining issue in the case is Plaintiff's Americans with Disabilities Act claim against the Texas Department of Criminal Justice and the University of Texas Medical Branch.

**I. Background**

The operative pleading in the case is Plaintiff's amended complaint (docket no. 14). In his amended complaint, Plaintiff states generally that TDCJ and UTMB "fail to provide Plaintiff as a disabled prisoner who is legally blind with color vision impairment and myopia, with a reasonable accommodation, after multiple requests which were ignored upon last March 18, 2020, admitting they do not provide service for my disabilities, with knowledge staffing damaged my prescribed property (medical), are sued in entity capacity."

Plaintiff describes an incident on April 6, 2018, in which former defendant Officer Polite intentionally damaged his eyeglasses, which Plaintiff had for "legal blindness," by removing the lenses. On June 8, 2018, Plaintiff states that his mother sent him a letter she received from the TDCJ

Director's Office about her request that the institution provide a remedy for his legal blindness and damaged property; Plaintiff states that the letter said that the matter would be investigated by the Ombudsman's office and Plaintiff should send a medical request to UTMB. In May of 2018, Plaintiff filed grievances which were denied. He states that Major Ginsel conducted an investigation, but neither he nor his family was informed of the result of the investigation.

In September of 2018, Plaintiff states that he sent a request to the UTMB Clinic for reasonable accommodation of his color vision impairment, but never received a response and "concluded it was ignored." In November of 2019, he made another request for reasonable accommodation, but again received no response. Plaintiff notes that he had been sent from the Powledge Unit to the Gib Lewis Unit.

Plaintiff states that "after arriving back to the Powledge Unit after retransfer from Gib Lewis in January 2020. Gib Lewis determined they could not make accommodation for my medical conditions. I made another request for reasonable accommodation for color vision impairment at Powledge UTMB clinic February 18, 2020. There was no response to the request."

Plaintiff states he decided that this lack of response was due to the COVID-19 pandemic, since a change to medical protocols had been posted highlighting that only emergencies would be seen, and no non-essential medical requests. He made a final attempt by asking if "they" would call the vision clinic to see if he could get a future accommodation, but he received a response saying that there was no service which would accommodate his disability of color blindness.

In his statement of claim, Plaintiff asserts that TDCJ-CID and UTMB "failed to provide Plaintiff as a protected class disability, who is legally blind with color vision impairment and myopia with a reasonable accommodation under the law, after multiple requests which were ignored, and upon final request making admission there is no services for my disability, with knowledge of TDCJ-CID staff intentionally damaging of my prescribed property is deliberate indifference of Plaintiff's serious medical needs, which also discrimination under the ADA and Title II of RA Acts [i.e. the Rehabilitation Act]."

Plaintiff attached a request which he sent in March of 2020 to personnel at the Powledge Unit, to a motion for summary judgment which he previously filed (docket no. 5-1, p. 9). The request stated that in October of 2015, he was seen by the optometry department at the Estelle Unit, and he was told at that time that they did not provide eyeglass lenses for color blindness. He still had his free world glasses at that time, which had a prescription for color vision impairment; however, these glasses were damaged in a property confiscation in 2018. He asked if it was possible to contact the optometry department at the Estelle Unit to see if they now have services for color vision impairment. The response to this request stated "Estelle has nothing available for color blindness from what I have been reported."

For relief, Plaintiff asks for compensatory damages of $35,000.00 from all of the originally named defendants, including TDCJ and UTMB, as well as punitive damages from the individual defendants (not including TDCJ and UTMB) and court costs. He also asks for injunctive relief, stating that he has a serious medical need for which TDCJ does not provide a service and his vision is severely limited. He states that "my family wants to provide me with replacement eyeglasses from my free-world optometrist. I need injunction with clear instructions for institution to perform the reasonable accommodations as oppose to their multiple ignorance [sic] of my request for remedy."

## II. The Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings

The Defendant UTMB has filed a motion to dismiss, and TDCJ has filed a motion for judgment on the pleadings which parallels the motion to dismiss. The Defendants assert that Title II of the ADA provides that "no qualified person with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

Similarly, the Defendants state Section 504 of the RA provides that no otherwise qualified individual with a disability in the United States shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving federal financial assistance. Congress intended that Title II work in the same manner as Section 504 and jurisprudence interpreting either statute is generally applicable to both.

The Defendants argue that in order to obtain relief under these statutes, a plaintiff must show that he has a qualifying disability, he is being denied reasonable accommodations to access the public entity's services, and was excluded by reason of his disability. They contend that the ADA provides a right to reasonable accommodation, not an inmate's preferred accommodation, and state that compensatory damages may only be awarded upon a showing of intentional discrimination.

Turning to Plaintiff's complaint, the Defendants argue that Plaintiff presents no facts satisfying the second or third prongs. Specifically, they assert that Plaintiff does not describe a reasonable accommodation to which he is entitled, and that Plaintiff does not allege that he was discriminated against because of his disability. They say that his complaint also suggests that his condition is not a recognized qualifying disability, as shown by his allegation that he was told he could not be provided services for his disability.

### III. Plaintiff's Responses

In his first response (docket no. 35), Plaintiff asserts that legal blindness is "clearly described as a disability." He states that he alleges that his glasses are for color vision impairment and severe myopia, and are not ordinary visionwear common to the public at large. He asserts that his claims are "also 8th and 14th Amendment in nature," and cites a case from the First Circuit as saying that a discrimination claim can be presented as a denial of access to part of the prison's program of medical services and can be pursued under the ADA.

Plaintiff acknowledges that TDCJ and UTMB have a program in the medical department to provide vision-corrective eyewear to prisoners, but the program does not provide "adequate or diagnosable treatment accommodations for the plaintiff's medical condition and / or disability for any ameliorative effects." He notes that one UTMB official suggested that he determine if his

family could send him eyewear through the Warden, and cites a case from the Southern District of Florida saying that a prisoner's allegation that he is blind states a claim under the ADA.

Plaintiff argues that he has adequately stated a claim and that the Defendants' motion violates Rules 7 and 8 of the Federal Rules of Civil Procedure. He says that a reasonable jury could find in his favor and that he has alleged intentional damaging of his personal property through deliberate indifference by TDCJ staff.

In his supplemental response (docket no. 37), Plaintiff again says that he is legally blind with color vision impairment and extreme myopia. This means that he cannot see or distinguish colors, specifically green and red on white, black, or blue fields. He also has black and gray spots in his field of vision, and was diagnosed in 2013 with the beginning stages of glaucoma. Plaintiff argues that this impairment affects his ability to write. He says that persons in the free world have access to prescription lenses which assist them with color vision impairment; in fact, Plaintiff states that skiers have lenses in their ski goggles which block blue light frequencies coming off the snow. He states that color vision impairment is common to the public at large.

Plaintiff argues that the Defendants have not presented a defense that Plaintiff has meaningful access to medical services for corrective eyewear. He contends that the facts of his case could meet the Fifth Circuit's decision in Delano-Pyle v. Victoria City, Texas, 302 F.3d 576 (5th Cir. 2002). He maintains that deliberate indifference is present in his case and cites Tennessee v. Lane, 541 U.S. 509, 528-33 (2004) and U.S. v. Georgia, 546 U.S. at 155-60 (2006), stating that "the entities were aware through investigations, and the plaintiff's various complaints, and failed to remedy it, or created or allowed to continue a policy in which discriminatory practices occurred." In his amended response to the motion to dismiss, Plaintiff asserts that the Defendants' response is "factually incorrect as to the arguments," and that similar arguments by the Defendants have been rejected by the Northern District of Texas in a case called O'Neil v. Texas Department of Criminal Justice, 804 F.Supp.2d 532 (N.D.Tex. 2011). He states that the court there determined that TDCJ's own records could establish intentional discrimination and that he has alleged that the

Defendants have actual knowledge of his disability but took no action. He also argues that the O'Neil decision determined that TDCJ waives immunity and that the Defendants' motion has no arguable basis in fact or law and should be struck or denied.

**III. Discussion**

In order to set out a claim under Title II of the Americans with Disabilities Act, the plaintiff must show: (1) that he is a qualified individual with a disability, (2) that he was excluded from participation in, or denied the benefits of, services, programs, or activities for which the public entity is responsible, or was otherwise being discriminated against, and (3) that such discrimination was because of his disability. 42 U.S.C. §12132; Luke v. Texas, 46 F.4th 301, 305 (5th Cir. 2022).

The term "disability" means a physical or mental impairment that substantially limits one or more major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. Atkins v. Salazar, 677 F.3d 667, 675 (5th Cir. 2011). This determination is made without regard to the ameliorative effects of mitigating measures such as medication, medical supplies, prosthetics, or low-vision devices (not including ordinary eyeglasses or contact lenses). 42 U.S.C. §12102(4)(E). The statute further notes that the ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.

In the recent case of Douthit v. Collier, 2022 WL 5240152 (5th Cir., October 5, 2022), the plaintiff Shannon Mark Douthit, a Texas prisoner, stated that he suffered from obesity and heat sensitivity and that he has an amputated leg. He contended that the defendants in his lawsuit, including the Executive Director of TDCJ, a warden, two lieutenants, a sergeant, a major, the State of Texas, and the Correctional Institutions Division of TDCJ, violated the ADA by forcing to carry his personal belongings during shakedowns and by denying him air-conditioned accommodations as required by a court order issued in a separate case in which Douthit was a class member. He also raised a claim of retaliation under 42 U.S.C. §1983.

The district court dismissed the lawsuit for failure to state a claim and lack of subject matter jurisdiction. With regard to the ADA claims, the district court held that Douthit did not allege specific facts which would give rise to a reasonable inference that the defendants intentionally discriminated against him because of any disability. The district court also said that the ADA claims were barred by sovereign immunity and that Douthit's retaliation claims did not sufficiently allege retaliatory motive or show a chronology from which retaliation could plausibly be inferred.

On appeal, the Fifth Circuit affirmed the district court's judgment on all matters except for the ADA claim concerning the shakedown. The court explained as follows:

> While Douthit did not explicitly plead a failure-to-accommodate theory, the circumstances included in his liberally construed complaint best fit into a failure-to-accommodate framework under the ADA. "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." Ball v. LeBlanc, 792 F.3d 584, 596 n.9 (5th Cir. 2015). To recover compensatory damages under the ADA, a plaintiff must make a showing of intentional discrimination. Miraglia v. Bd. of Supervisors of La. State Museum, 901 F.3d 565, 574 (5th Cir. 2018). Precedent has not "delineate[d] the precise contours" of this showing, but at bottom, "intent requires that the defendant at least have actual notice." Id. a 575.
>
> In his Complaint, Douthit alleges that he has an amputated leg along with the "heat sensitive medical condition" of obesity. He alleges that despite a medical lifting restriction, he was forced on two occasions to carry his personal property, leading him to "injure[ ] his stump." Douthit claims that, on both occasions, he told prison officials of his disability and medical restrictions, but officials angrily dismissed him and refused to accommodate him. Thus, as to his shakedown-related claims, Douthit has met the three elements required for an ADA failure-to-accommodate claim— qualifying disability (obesity and amputated leg), notice (Douthit's statements to Defendants and filed grievances), and failure to provide reasonable accommodation (Defendants' failure to act). LeBlanc, 792 F.3d at 596 n.9.

Douthit, 2022 WL 5240152 at *2. Thus, the Fifth Circuit reversed the dismissal of Douthit's failure to accommodate claim concerning the shakedowns.

In the present case, Plaintiff, like Douthit, effectively raises a failure-to-accommodate claim. He alleges that (1) he is a qualified individual with a disability in that he is legally blind and requires specialty eyewear, (2) this disability was known by the covered entities because he has continuously complained about the lack of specialty eyewear and requested that it be provided, and (3) that the

entities failed to make reasonable accommodations because they failed to act on his request for eyewear and in fact advised him that the type of specialty eyewear he says he needed was unavailable. As in Douthit, these allegations are sufficient to state a failure-to-accommodate claim under the ADA.

The Defendants here did not raise a sovereign immunity defense, but such a defense would lack merit in any event because Plaintiff's allegations are sufficient at this stage of the proceeding to set forth a claim under the Fourteenth Amendment. Douthit, 2022 WL 5240152 at *3, *citing* Valentine v. Collier, 993 F.3d 270, 281 (5th Cir. 2021). Likewise, as in Douthit, Plaintiff's pleadings are sufficient at this stage to allege intentional discrimination based upon his disability.

## IV. Conclusion

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint, in contrast to a post-discovery motion for summary judgment, the determination of which revolves around whether a genuine issue of material fact remains after considering both sides' proffered evidence. Rader v. Cowart, 543 F.App'x 358, 2013 U.S. App. LEXIS 20415, 2013 WL 5509172 (5th Cir., October 4, 2013); *see also* St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 440 n.8 (5th Cir. 2000). The Court's task in reviewing a motion to dismiss is to determine whether the plaintiff has stated a legally cognizable claim which is plausible, not to evaluate the plaintiff's likelihood of success. Thompson v. City of Waco, Texas, 764 F.3d 500, 503 (5th Cir. 2014). The court must accept the well-pleaded facts as true and view them in the light most favorable to the plaintiff, and he standard for evaluating a motion for judgment on the pleadings is the same standard used for deciding motions to dismiss. Clothier New Orleans, L.L.C. v. Twin City Fire Insurance Co., 29 F.4th 252, 256 (5th Cir. 2022).

In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief which is plausible on its face. Severance v. Patterson, 566 F.3d 490, 501 (5th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court explained that Rule 12(b)(6) must be read in conjunction

with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 555.

Fed. R. Civ. P. 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plaintiff meets this standard by plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

As set out above, Plaintiff's pleadings are sufficient to survive a motion to dismiss and motion for judgment on the pleadings. The merits of his underlying claims will be a question for another day.

## RECOMMENDATION

It is accordingly recommended that the Defendants' motions to dismiss and for judgment on the pleadings (docket no. 34) be denied. It is further recommended that the Defendant University of Texas Medical Branch be required to answer the lawsuit within 14 days from the date of entry of the order denying these motions.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. See Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. <u>Duarte v. City of Lewisville</u>, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 6th day of December, 2022.**

*[Signature]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE