IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JALIL RAJAII FLOYD | § | |
| v. | § | CIVIL ACTION NO. 6:21cv274 |
| OFFICER POLITE, ET AL. | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Jalil Floyd, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit complaining of alleged violations of his rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The sole remaining issue in the case is Plaintiff's Americans with Disabilities Act claim against the Texas Department of Criminal Justice and the University of Texas Medical Branch.

**I. Background**

The operative pleading in the case is Plaintiff's amended complaint (docket no. 14).[1] In his amended complaint, Plaintiff states generally that TDCJ and UTMB "fail to provide Plaintiff as a disabled prisoner who is legally blind with color vision impairment and myopia, with a reasonable accommodation, after multiple requests which were ignored upon last March 18, 2020, admitting

---

[1] Plaintiff's original complaint named as defendants Officer Polite, Sgt. Hunt, Lt. Plentl, Captain Teaff, and Warden Garcia. A Report issued on September 9, 2021, recommending that the case be dismissed due to the expiration of the statute of limitations. On October 18, 2021, Plaintiff filed an amended complaint adding TDCJ and UTMB as defendants, clarifying his claims under the ADA, and arguing that his ADA claim arose in 2020, within the statute of limitations. The Report was adopted on November 8, 2021, and all of the individual defendants were dismissed, leaving only Plaintiff's ADA claims against TDCJ and UTMB.

they do not provide service for my disabilities, with knowledge staffing damaged my prescribed property (medical), are sued in entity capacity."

Plaintiff describes an incident on April 6, 2018, in which he said that former defendant Officer Polite intentionally damaged his eyeglasses, which Plaintiff had for "legal blindness," by removing the lenses. On June 8, 2018, Plaintiff states that his mother sent him a letter she received from the TDCJ Director's Office about her request that the institution provide a remedy for his legal blindness and damaged property. According to Plaintiff, the letter said that the matter would be investigated by the Ombudsman's office and Plaintiff should send a medical request to UTMB. In May of 2018, Plaintiff filed grievances which were denied. He states that Major Ginsel conducted an investigation, but neither he nor his family was informed of the result of the investigation.

In September of 2018, Plaintiff states that he sent a request to the UTMB Clinic for reasonable accommodation of his color vision impairment, but never received a response and "concluded it was ignored." In November of 2019, he made another request for reasonable accommodation, but again received no response. Plaintiff had been sent from the Powledge Unit to the Gib Lewis Unit.

Plaintiff asserts that "after arriving back to the Powledge Unit after retransfer from Gib Lewis in January 2020, Gib Lewis determined they could not make accommodation for my medical conditions. I made another request for reasonable accommodation for color vision impairment at Powledge UTMB clinic February 18, 2020. There was no response to the request."

Plaintiff further states that he decided this lack of response was due to the COVID-19 pandemic, since a change to medical protocols had been posted highlighting that only emergencies, not non-essential medical requests, would be seen. He says that he made a final attempt by asking if "they" would call the vision clinic to see if he could get a future accommodation, but he received a response saying that there was no service which would accommodate his disability of color blindness.

In his statement of claim, Plaintiff asserts that TDCJ-CID and UTMB "failed to provide Plaintiff as a protected class disability, who is legally blind with color vision impairment and myopia with a reasonable accommodation under the law, after multiple requests which were ignored, and upon final request making admission there is no services for my disability, with knowledge of TDCJ-CID staff intentionally damaging of my prescribed property is deliberate indifference of Plaintiff's serious medical needs, which also discrimination under the ADA and Title II of RA Acts [i.e. the Rehabilitation Act]."

Plaintiff attached a request which he sent in March of 2020 to personnel at the Powledge Unit, to a motion for summary judgment which he previously filed (docket no. 5-1, p. 9). The request stated that in October of 2015, he was seen by the optometry department at the Estelle Unit, and he was told at that time that they did not provide eyeglass lenses for color blindness. He still had his free world glasses at that time, which had a prescription for color vision impairment; however, these glasses were damaged in a property confiscation in 2018. He asked if it was possible to contact the optometry department at the Estelle Unit to see if they now have services for color vision impairment. The response to this request stated "Estelle has nothing available for color blindness from what I have been reported."

For relief, Plaintiff asks for compensatory damages of $35,000.00 from all of the originally named defendants, including TDCJ and UTMB, as well as punitive damages from the individual defendants (not including TDCJ and UTMB) and court costs. He also asks for injunctive relief, stating that he has a serious medical need for which TDCJ does not provide a service and his vision is severely limited. He states that "my family wants to provide me with replacement eyeglasses from my free-world optometrist. I need injunction with clear instructions for institution to perform the reasonable accommodations as oppose to their multiple ignorance [sic] of my request for remedy."

The Defendant UTMB filed a motion to dismiss, and the Defendant TDCJ filed a motion for judgment on the pleadings. These motions were considered together and denied on January 12,

2023. On April 26, 2023, the Defendants filed a motion for summary judgment based on failure to exhaust administrative remedies.

## II. The Defendants' Motion for Summary Judgment

In their motion, the Defendants argue that Plaintiff did not file a grievance against UTMB relating to his alleged color vision impairment accommodation. They state that Plaintiff claims he made multiple requests for an accommodation to receive color vision impairment lenses, but he did not file any grievances regarding UTMB.

With respect to TDCJ, the Defendants state that Plaintiff filed a grievance against Officer Polite, asking that she pay for his glasses which he says that she confiscated. He stated that he was color blind and that the confiscated glasses had corrective lenses. In his Step Two grievance, the Defendants state that Plaintiff claimed there was no investigation into his medical property damage, Officer Polite violated policy by serving as the grievance investigator, and the confiscation papers were filled out improperly.

The Defendants contend that this is the only grievance which Plaintiff filed concerning the alleged confiscation of medical property by Polite, and that this grievance is insufficient to give TDCJ notice of an ADA violation. They argue that Plaintiff never filed a grievance asking to be issued new color-corrective glasses or to see a medical provider to receive a new prescription.

The Defendants attach copies of Plaintiff's grievances as summary judgment evidence. In grievance no. 2018113842, signed on April 6, 2018 (docket no. 69-1, p. 13), Plaintiff complained that at 2:30 a.m., he was called to the center hall by Sgt. Hunt for a disciplinary investigation. When he arrived, Hunt told him that he had a write-up from Officer Polite for a Code 20 [sexual misconduct - disciplinary violation] and what was his statement. Plaintiff told Hunt that at 11:00 p.m., Polite was doing ID checks. When she arrived at his cubicle, he pointed at his ID on the table with his right hand. His left hand was holding a "TDCJ-approved sub-zero black male magazine." He was fully clothed in pants and a shirt, and his hands were not doing anything inappropriate. Plaintiff stated that he asked Hunt what Polite said that he was doing, since he looked at the

paperwork and saw that there was nothing on it other than Code 20. Hunt rolled her eyes and told him to go back to the dorm.

Plaintiff stated that another inmate, who turned out for disciplinary with him, told him that after Plaintiff left the desk, Polite came back to see what had been said so that she could re-write the case. When Plaintiff returned to the dorm, he stated that Polite was walking out of the dorm with Plaintiff's medical braces, Ace wrap, and eyeglass lens which she had broken out of his glasses. Once he got back and saw his property on the floor, he found his eyeglass frames broken and a lens missing. Plaintiff asserted that Polite did all of this for no reason other than retaliation.

Plaintiff stated in the grievance that he has permanent medical disabilities, complete implants, and musculo-skeletal re-engineering on his left side, shoulder to ankle. He added that he is color blind and his free-world glasses are specially designed to compensate for that, with special polycarbonate progressive blue-blocker lenses, which he is now without. Officers Boxie, Eden, and King can confirm that he has been wearing free-world glasses since he has been on this unit. He showed Lt. Plentl and Sgt. Hunt his glasses, hoping they would take a picture and get his lens back from Polite, but they ignored his complaints.

According to Plaintiff's grievance, Sgt. Kelly came to the dorm at 5:45 a.m. to get him to sign confiscation papers. Plaintiff refused to sign the papers, saying that they did not reflect everything which had been taken. He asked Kelly, in front of Officer Polite, if she had thrown his eyeglass lens and Ace wrap in the trash, and Polite lied to them, saying that everything she had taken was in the bag. After Kelly and Polite left, Plaintiff stated that he talked to Officer Lantrip. She called Sgt. Hunt to explain the situation which Plaintiff was having with Polite.

Plaintiff said that when he talked to Lantrip, she was leaving on shift change. He asked her if she had seen his Ace wrap and eyeglass lens, and Lantrip stated that she thought Polite had put them in the bag, with the lens stuck in the middle of the Ace wrap. Plaintiff asserted that Officer Polite also violated his rights under the Americans with Disabilities Act and that her actions were done in retaliation. The response to this grievance stated that Officer Polite denied the allegations

in the grievance and reported that she did not break anything. A chain and wire were confiscated and these would not be returned, but Plaintiff's braces were returned to him.

In his Step Two appeal of this grievance (docket no. 69-1, p. 11), Plaintiff complained that it is unreasonable to consider that his grievance has no merit on property he desperately needed. He argued that there was no investigation of his grievance with regard to medical property damage by Officer Polite, apparently meaning his prescription eyeglasses. He cited the Texas Government Code on inmate grievances and stated that Officer Polite also violated P.D. 22 (i.e. the TDCJ employees' rules of conduct). He stated that Officer Lantrip had told him she saw the lens of his eyeglasses stuffed in the middle of his Ace wrap which Polite had also taken. An inmate named Karras, in the next cell, heard Polite drop Plaintiff's eyeglasses on the floor. Inmate Robinson also heard this, and he saw Polite walking out with Plaintiff's property. Plaintiff stated that he showed the broken eyeglasses to Sgt. Hunt and Lt. Plentl by placing them on the desk in front of them.

Plaintiff complained that Officer Polite investigated the grievance which he had written against her on April 19, 2018. He claimed that she came to the dorm when she was not assigned to 4 Block and demanded information from Plaintiff in a threatening manner. She said that he had written a grievance on her and asked who gave him his medical property back. Plaintiff told her that this was done by Sgt. Atwood on 1st shift, who had Officer Acevado investigate his property paperwork. Atwood also discarded a false contraband case which Polite had written against Plaintiff.

Plaintiff stated that he sent I-60 inmate request forms to Warden Polk and Grievance Coordinator Irons on April 20 to complain about Polite investigating herself. He said that no reasonable investigative reviewing official would find unexplained confiscation of medical property with clear property papers, and damaged property at 2:30 a.m., to be defensible. Plaintiff contended that everything which Polite did was "indefensible and supported with false pretenses," including the confiscation papers having the wrong cubicle number and saying that ownership is in question. He said that Officer Polite failed to document all of the property which she took, and Officer Lantrip

called Sgt. Hunt to say that Polite had taken property to which Plaintiff had papers; however, the ranking officers failed to investigate. Plaintiff requested that Officer Polite pay for and replace his damaged eyeglasses. The response to this grievance appeal stated that a review of the Step One grievance was conducted and Plaintiff was appropriately advised at the unit level, and there is no evidence showing that TDCJ staff were responsible for any allegedly damaged property.

No other grievance filed by Plaintiff mentions his eyeglasses. One other grievance, no. 2018118115 (docket no. 69-1, p. 17) complains about the disciplinary case for sexual misconduct which he received from Officer Polite concerning the search in which he says that she broke his eyeglasses. The disciplinary case was upheld at the Step One and Step Two levels.

### III. Plaintiff's Response in Opposition to the Motion

In his response in opposition to the motion for summary judgment (docket no. 70), Plaintiff contends that the Defendants have not submitted an adequate factual case for summary judgment. He says that there is a genuine issue of fact as to whether he has been "denied meaningful access to TDCJ-CID Managed Care and UTMB's medical services in a discriminatory manner, which would incur liability by the remaining parties, and did he have an available administrative remedy as determined by the Supreme Court's legal standard and the submitted facts in this proceeding before the Court. R. 56(c)(4), Fed. R. Civ. P."

Plaintiff says that he has disability service requests as well as a letter from Bryan Collier, Director of the Texas Department of Criminal Justice. He cites *Ross v. Blake*, 578 U.S. 632, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016) as saying that the administrative remedy is unavailable where it operates as a simple dead end, with officers unable or consistently unwilling to provide any relief to aggrieved inmates. He contends that "the actual facts before the Court establishes Floyd has no available ADA exhaustion remedy, nor a meaningful access to the medical service program. Moreover, instead of adequately addressing Floyd's aggrievements in the formal process, the Defendants by director's letter and visiting Floyd at unit in March 2018 - Official Berman, TDCJ Managed Care, sent the plaintiff in another direction knowing he had no reasonable results."

Plaintiff argues that the Defendants have the burden to establish that there is an available remedy which is not a dead end.

Next, Plaintiff argues that he has to establish that he has a qualifying disability, and his family members are gathering optometrist records for him to do so, He says that a disability of legal blindness can substantially limit a prisoner's activities, and that a prisoner's sworn complaint and medical records can establish "expert base refutation." Thus, he maintains that for purposes of summary judgment opposition, he has a qualifying disability. He says that the Defendants are withholding information, for which they are subject to sanctions, and again contends that he has no ADA remedy to exhaust and that his complaints were ignored by officials unwilling to address them.

As summary judgment evidence, Plaintiff offers an inmate request form dated as received on March 18, 2020, (docket no. 70-1, p. 1) in which he said that he was seen at the optometry department at the Estelle Unit in October of 2015. He was told at that time that they did not provide eyeglass lenses for color blindness, and he does not have his prescription eyeglasses because they were taken in a property confiscation in 2018; he asked if the infirmary could contact the Estelle Optometry Department to see if they now have services for color vision impairment. The response to this request states "Estelle has nothing available for color blindness from what I have been reported."

Next, Plaintiff has an "unsworn declaration" saying that his father brought his eyeglasses to him at the Brazoria County Detention Center in 2014. He had these glasses until April of 2018, when they were damaged and the lens confiscated by TDCJ staff in an unauthorized cell search. He filed a grievance and his family complained to TDCJ, and they were told to contact UTMB Medical Services for a remedy. After several attempts, he was told in March of 2020 that no services were provided for his particular impairment, although other vision impairments did receive services. He states that he received "inadequate eyewear" in 2015, which did not help with his disability.

Plaintiff also attaches a portion of the TDCJ Offender Orientation Handbook which says that inmates may not grieve "matters for which other appeal mechanisms exist" or "any matter beyond the control of the agency to correct." (Docket no. 70-2, p. 2).

Plaintiff's next exhibit is a form labeled "Physical Medical Source Statement," which appears to be a social security disability document signed by Dr. Mark Marconi and bearing the date of February 27, 2012. The form lists as diagnoses cervical spondylosis and C4-C5 degenerative disc disease. In response to a question concerning other limitations which would affect the ability to work at a regular job on a sustained basis, the form says "less stressful setting / color vision impairment." (Docket no. 70-3, pp 1-5). Finally, Plaintiff attaches copies of the grievances included in the Defendants' motion for summary judgment.

The Defendants have filed a reply (docket no. 71) arguing that Plaintiff has failed to show that the grievance process was unavailable, Plaintiff is aware of the grievance process and has filed other grievances concerning medical issues, and Plaintiff does not dispute that his claims against the Defendants for compensatory damages are barred by the Eleventh Amendment.

In his sur-reply (docket no. 72), Plaintiff contends that the Defendants "are making arguments against the very evidence that they have not disclosed." He argues that in the grievance procedure, "the remedy was unavailable, not the process." Plaintiff maintains that the Defendants have the burden to show that there were available procedures which he did not exhaust and again asserts that he has no available remedy which could be addressed by the grievance procedure, which is therefore a "dead end." Finally, he argues that compensatory damages are available under the ADA and he is not seeking punitive damages.

**IV. Discussion**

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997e, which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The Fifth Circuit has held that "there can be no doubt that pre-filing exhaustion of administrative remedies is mandatory." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The court went on to state that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Id.*

Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This requirement means mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. *Johnson*, 385 F.3d at 515. The Texas Department of Criminal Justice - Correctional Institutions Division has a two-step formal grievance process, including a Step One grievance which is handled within the facility and a Step Two grievance appeal which is handled at the state level. A prisoner must pursue a grievance through both steps for it to be considered exhausted. *Id.* This means that in order for TDCJ-CID inmates to exhaust an issue properly, the issue must be presented in a Step One grievance and then appealed to Step Two. New issues cannot be raised for the first time in a Step Two grievance appeal and only one issue per grievance may be presented. *Randle v. Woods*, 299 F.App'x 466, 2008 U.S. App. LEXIS 24138, 2008 WL 4933754 (5th Cir., November 19, 2008), *citing Woodford*, 548 U.S. at 92- 93 *and Johnson*, 385 F.3d at 515; *see also* TDCJ Offender Orientation Handbook, February 2017, p. 74 (inmates may present only one

issue per grievance). The district court may not excuse failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison Litigation Reform Act, even to take "special circumstances" into account. *Ross*, 578 U.S. at 639-40.

The Fifth Circuit has stated that the exhaustion requirement must be interpreted in light of its purposes, which include the goal of giving prison officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 516, *citing Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Thus, a grievance is considered sufficient to the extent it "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson*, 385 F.3d at 517.

The statute requires prisoners to exhaust "available" administrative remedies, and the Supreme Court has identified three circumstances under which administrative remedies are considered "unavailable." *Ross*, 578 U.S. at 643. The first of these is where the administrative remedy procedure operates as a simple dead end, with officials unable or consistently unwilling to provide any relief. The Court gave as an example where a prison handbook directed inmates to submit their grievances to a particular administrative office, but in practice that office disclaimed any capacity to consider those petitions, or if administrative officials have apparent authority, but decline ever to exercise it.

The second circumstance is where an administrative scheme is so opaque that it becomes, practically speaking, incapable of use; in other words, a mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.

The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.

The summary judgment evidence shows that Plaintiff was aware of the administrative grievance process and pursued it on other occasions. In grievance no. 2020072833, signed on February 4, 2020 (docket no. 69-1, p. 6), Plaintiff complained of a six-year delay in getting him

treated for hepatitis C. Along with Plaintiff's grievances concerning the incident with Officer Polite and the ensuing disciplinary case, the summary judgment evidence also contains grievances filed by Plaintiff concerning the cleanliness of the dining hall with relation to inmates with communicable diseases, being housed in administrative segregation for 18 days at the Estelle Unit while he was there on a medical chain, and the status of a withdrawal from his inmate trust account.

The Step One grievance and Step Two appeal filed by Plaintiff regarding this incident did not serve to apprise TDCJ officials of Plaintiff's ADA complaint against TDCJ and UTMB. These grievances were filed in 2018 and complained that Officer Polite broke his eyeglasses, which he said was an ADA violation, but the active complaint in his lawsuit is that TDCJ and UTMB did not accommodate his disability by failing to provide adequate prescription eyewear - a wholly different matter. Furthermore, Plaintiff specified in his amended complaint that his ADA claim against TDCJ and UTMB arose in 2020, when he was denied corrective eyeglasses. (Docket no. 14-1, p. 2). Plaintiff's 2018 grievance regarding Officer Polite did not give the prison officials a fair opportunity to resolve the claim presented in his lawsuit, and thus did not exhaust Plaintiff's administrative remedies.

Plaintiff maintains that the administrative remedies were "unavailable." He argues that the Defendants have the burden to show that there were available procedures which he did not exhaust, citing *Cantwell v. Sterling*, 788 F.3d 507 (5th Cir. 2015). In *Cantwell*, the prisoner filed a Step One grievance but claimed he never received a response, so he did not proceed to the second step. The Fifth Circuit stated that the question before the court whether those circumstances sufficed for exhaustion, but this could not be determined on the record. In the present case, by contrast, the grievances which Plaintiff filed did not give the prison officials a fair opportunity to resolve the issue forming the basis of the lawsuit, and he did not file a Step One grievance at all pertaining to that issue.

The summary judgment evidence shows that the Defendants met their burden by showing that Plaintiff did not exhaust the two-step administrative grievance procedure available within

TDCJ. The Fifth Circuit has explained that the plaintiff bears the burden of demonstrating the futility of administrative review. *Schipke v. Van Buren*, 239 F.App'x 85, 2007 U.S. App. LEXIS 20839, 2007 WL 2491065 (5th Cir. 2007), *citing Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994); *see also Parham v. Carrier Corp.*, 9 F.3d 383, 391 (5th Cir. 1993) (mere subjective belief that the grievance procedure is futile is not sufficient).

Although Plaintiff argues that the TDCJ grievance process is "a simple dead end," he offers nothing to suggest that no form of relief is available to him through the grievance process, nor that UTMB officials are consistently unwilling or unable to grant relief. The fact that a person at the Powledge Unit told him in 2020 that the Estelle optometry department had nothing available for color blindness from what he, the person at the Powledge Unit, had been told does not show that a Step One grievance or a Step Two grievance appeal to the medical administrators at the University of Texas Medical Branch would have been futile.

The Supreme Court has stated that administrative relief is "available" for purposes of the Prison Litigation Reform Act so long as the prison administrator can conceivably "take some action in response to a complaint," even if that relief does not provide the precise remedial action an inmate demands to the exclusion of all other forms of redress. *Booth*, 532 U.S. at 736. There is no indication that the prison administrators at TDCJ or the medical administrators at UTMB could not have taken any action in response to Plaintiff's complaint.

Plaintiff points to statements in the TDCJ Offender Orientation Handbook that prisoners cannot grieve matters for which other appeal mechanisms exist or matters beyond the agency to control. However, he fails to show that either of these conditions exist. The grievance procedure is the normal way of challenging the decisions of prison officials, and Plaintiff has not identified any other "appeal mechanism;" the Fifth Circuit has stated that I-60 inmate request forms are not part of the two-step TDCJ formal grievance procedure and thus do not serve to exhaust administrative remedies. *Bisby v. Garza*, 342 F.App'x 969, 2009 U.S. Dist. LEXIS 19433, 2009 WL 2709326 (5th Cir., August 28, 2009); *Sanchez v. Grounds*, civil action no. 5:14cv64, 2015 U.S. Dist. LEXIS

40054, 2015 WL 1456068 (E.D.Tex., March 30, 2015). Nor has he offered anything to suggest that the provision of special eyewear was beyond the power of the medical administrators at the University of Texas Medical Branch to control. This claim is without merit.

Plaintiff does not argue, nor does the evidence indicate, that the TDCJ administrative grievance scheme was so opaque as to become incapable of use. Plaintiff himself navigated the grievance procedure on multiple occasions and clearly knew how to use it.

The third form of unavailability is where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Plaintiff argues that "the defendants by director's letter and visiting Floyd at unit in March 2018, Official Berman, TDCJ Managed Care, sent the plaintiff in another direction knowing he had no reasonable results."

The "director's letter" to which Plaintiff refers appears at docket no. 5-1, p. 8. It is a letter dated May 30, 2018, from the Patient Liaison Program, Office of Professional Standards, TDCJ Health Services Division, on the letterhead of TDCJ Executive Director Bryan Collier, addressed to Plaintiff's mother. The letter says that Plaintiff's mother expressed concern regarding the confiscation of Plaintiff's medical braces, the destruction of his free world eyeglasses, and the action of security staff, and requested reimbursement for damaged property. According to the letter, an investigation was conducted by the Health Services Division and determined that there have been no sick call requests or reported complaints from Plaintiff about the confiscation of his medical braces or his eyeglasses, and the concerns about the confiscation of the medical braces, destruction of his eyeglasses, the actions of security staff, and the request for reimbursement are not under the purview of that office; instead, Plaintiff's mother should "receive a separate response from the Texas Department of Criminal Justice, Office of the Ombudsman, regarding these concerns." The letter went on to say that for further information about Plaintiff's health care, his mother may contact the medical staff at UTMB, giving the name of the practice manager at the Powledge Unit, and for more

14

information, she could write to the UTMB - Correctional Managed Care Department of Quality Services in Galveston.

This letter to Plaintiff's mother advising her of ways in which she could obtain information about Plaintiff's health care does not state or suggest that Plaintiff himself could not pursue the grievance process concerning alleged violations of the Americans with Disabilities by TDCJ or UTMB. This letter thus does not represent a thwarting of Plaintiff from taking advantage of the grievance process through machination, misrepresentation, or intimidation.

Plaintiff also refers, obliquely, to "visiting Floyd at unit in March 2018: Official Berman, TDCJ Managed Care sent the plaintiff in another direction knowing that he had no reasonable results." It is not clear what he is referring to, particularly in light of the fact that March of 2018 was before the incident involving Officer Polite when Plaintiff lost his eyeglasses. In any event, Plaintiff has offered nothing to show how an encounter in March of 2018 "sent him in another direction" or otherwise prevented him from filing grievances two years later seeking corrective eyewear. Plaintiff has not met any of the criteria set out in *Ross* for demonstrating that the administrative remedy procedure is unavailable, nor has he shown any other basis upon which his failure to exhaust administrative remedies may be excused.

**V. Conclusion**

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Burleson v. Texas Department of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Id.*, *citing Allen v. Rapides Parish School Board*, 204 F.3d 619, 621 (5th Cir. 2000).

The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. *Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012).

The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Traveler's Indemnity Co.*, 465 F.3d 156, 164 (5th Cir. 2008). Instead, a party opposing summary judgment must identify specific evidence in the record which supports the challenged claims and articulate the precise manner in which the evidence supports the challenged claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show a genuine factual issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The summary judgment evidence demonstrates that Plaintiff did not exhaust his available administrative remedies on his ADA claims against the Texas Department of Criminal Justice and the University of Texas Medical Branch prior to filing suit. As noted above, exhaustion of available administrative remedies prior to filing suit is mandatory, and district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing his complaint. *Gonzales*, 702 F.3d at 788. This means that a case must be dismissed where, as here, the available administrative remedies were not exhausted. *Id.*

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion for summary judgment (docket no. 69) be granted and the above-styled civil action dismissed without prejudice for failure to exhaust administrative remedies.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 20th day of June, 2023.**

*[signature: John D. Love]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE